**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**SPENCER JOHNSON**                                  **PLAINTIFF**
**ADC #159762**

**V.**                         **NO. 4:24-cv-01095-LPR-ERE**

**BRIANNA BELL,** *et al.*                            **DEFENDANTS**

**<u>AMENDED RECOMMENDED DISPOSITION</u>**

## I.    <u>Procedure for Filing Objections</u>

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Judge Rudofsky can adopt this Recommendation without independently reviewing the record.

## II.    <u>Background</u>

*Pro se* plaintiff Spencer Johnson, an Arkansas Division of Correction ("ADC") inmate, filed this lawsuit under 42 U.S.C. § 1983. *Doc. 2.* Mr. Johnson's complaint and amended complaint allege that, on May 10, 2024, inmates Gohler (an inmate listed on his enemy alert list) and Flippin stabbed him with a homemade knife. Mr. Johnson explains that: (1) Corporal Devin Carrington failed to properly

secure these inmates on the date in question; (2) Sergeant Rickey Minor failed to intervene to stop the attack and (3) Classification Supervisor Brianna Bell assigned him to the same hallway as the attackers despite knowing about the attack and the risk posed to Mr. Johnson's safety. Mr. Johnson is currently proceeding on deliberate indifference claims against Classification Supervisor Bell, Corporal Carrington, and Sergeant Minor.[1] *Docs. 4, 11*.

Defendants have filed a motion for summary judgment, brief in support, and statement of facts, arguing that Mr. Johnson failed to exhaust his administrative remedies as to his pending claims before filing this lawsuit. *Docs. 53, 54, 55.* Mr. Johnson filed a response (*Doc. 61, 62*), Defendants filed a reply (*Doc. 67*), and Mr. Johnson filed a second response. *Doc. 68*. Defendants' motion is now ripe for review.

On August 18, 2025, I recommended that Defendants' motion for summary judgment be granted. *Doc. 89*. That Recommendation remains pending. However, my Recommendation contained several scrivener's errors. Although those errors do not affect my analysis or the conclusion that I reached in the previous Recommendation, I now submit this Amended Recommendation to correct those errors.

---

[1] The Court previously dismissed Mr. Johnson's claims against Warden Gibson, Chief of Security Carl Lewis, and Captain/Shift Supervisor Madden. *Doc. 11*.

For the reasons stated below, I recommend granting Defendants' motion for summary judgment and dismissing Mr. Johnson's claims, without prejudice.

## III. <u>Discussion</u>:

### A. **The PLRA Makes Exhaustion Mandatory**

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted before filing a civil lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). To resolve the exhaustion question, the Court must determine: (1) what administrative remedies the ADC made available to inmates to bring and resolve claims; and (2) whether Mr. Johnson complied with prison requirements for exhausting his available administrative remedies.

**B.    The ADC Grievance Procedure**

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 19-34. *Doc. 53-2*. The written policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Id. at 19*.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident; (2) a "Step Two" formal unit-level grievance raising the claim with the Warden within three business days of the denial of the informal resolution; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision. *Id. at 6-14*. The grievance process ends when the appropriate Chief Deputy/Deputy/Assistant Director renders a written decision or rejects the appeal. *Id. at 13*.[2]

The inmate grievance procedure prohibits an inmate from abusing the grievance process. As a result, an inmate may not file more than three formal grievances within a seven-day time period. If an inmate files additional grievances,

---

[2] In his response to Defendants' motion, Mr. Johnson argues that, according to the ADC grievance procedure, "[t]he Chief Deputy/Deputy/Assistant Director may process a grievance appeal not meeting the criteria set forth above when necessary for the safety and security of the Department." *Doc. 53-2*. While that is correct, Chief Director Reed did not choose to process any of Mr. Johnson's grievances based on that provision.

ADC officers will review the grievance to determine if an emergency exists. *Id. at 15*.

> If no emergency exists, the grievance will be logged out on the same day received, and it shall be written the Unit Level Grievance Form "No action necessary – exceeds weekly limit," dated and signed. The original grievance will then be placed in the grievance file and no written response will be given to the inmate.

*Id*.

To complete the exhaustion process before bringing this lawsuit, Mr. Johnson was required to present his claim against each Defendant in a timely filed grievance and pursue all three steps of the ADC's grievance process until he either received a decision on the merits at the final stage or ADC officials improperly failed to provide a merits decision. See *Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits) (emphasis in original); *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (a prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits.").

## C.    Mr. Johnson's Grievance History

Defendants submit the declaration of ADC Assistant Inmate Grievance Coordinator Lakisha Lee. *Doc. 53-1*. Ms. Lee states that she reviewed Mr. Johnson's grievance history and determined that he filed fourteen grievances relevant to his

5

pending claims, VSM-24-00702, VU-24-00204, VU-24- 00205, VU-24-00225, VU-24-00226, VU-24-00228, VU-24-00309, VU-24-00352, VU-24- 00353, VSM24-01382, VU-24-00357, VU-24-00358, VU-24-00369, VSM-24-01565.[3] *Id. at 7.* However, Ms. Lee explains that Mr. Johnson failed to fully exhaust any of those grievance before filing this lawsuit as required by the PLRA.

### 1.    Grievance VSM-24-702

On May 18, 2024, Mr. Johnson submitted the informal resolution for grievance VSM-24-702. *Doc. 53-3 at 5*. In that grievance, Mr. Johnson explained that, on April 2, 2024 and May 10, 2024, other inmates had attacked him. *Id*. He explained that he feared for his safety and requested unidentified ADC officials to transfer him to another facility. *Id*.

On May 28, 2024, Mr. Johnson moved to the second step of the grievance procedure by filing a formal grievance. *Id*.

On May 29, 2024, ADC Inmate Grievance Coordinator Cindy Thornton rejected that grievance as non-grievable because it was transfer related.[4] *Id. at 4.*

---

[3] In his response to Defendants' motion, Mr. Johnson concedes that he did not fully exhaust the claims raised in grievances VU-24-357 or VU-24-358 because he submitted those grievances after he had exceeded his weekly limit for filing grievances. *Id. at 3, 9*. As a result, I will not discuss the claims raised in those grievances in this Recommendation.

[4] The ADC inmate grievance policy specifically states that matters related to transfers are non-grievable. *Doc. 53-2 at 3*. In addition, Mr. Johnson failed to identify any Defendant in grievance VU-24-702, nor did he explain how any Defendant violated his constitutional rights in that grievance.

On November 7, 2024, Chief Deputy Director Marshall Reed rejected that grievance appeal as non-grievable. *Id. at 3*.

For valid procedural reasons, the ADC failed to provide Mr. Johnson with a final decision on the merits of grievance VU-24-702. As a result, the claims raised in this grievance were not fully exhausted.[5]

### 2.      Grievances VU-24-204, VU-24-205, VU-24-225, VU-24-226

On May 26, 2024, Mr. Johnson submitted the informal resolution for VSM-24-204. *Doc. 53-4 at 1*. In that grievance, Mr. Johnson complained about the inmate attack that occurred on May 10, 2024. He explained that "the carelessness of . . . Sgt Minor Ricky and whoever was on 1&2 barracks post almost costed me my life." *Id*.

On May 28, 2024, Mr. Johnson submitted the informal resolution for grievance VU-24-205. *Doc. 53-5 at 1*.  In that grievance, Mr. Johnson inquired as to why inmate Goehler had not been placed on his enemy alert list. He states, "due to the lack of care security and responsibility," he was attacked. *Id*.

On June 8, 2024, Mr. Johnson submitted the informal resolution for grievance VU-24-225. *Doc. 53-6 at 1*. In that grievance, Mr. Johnson complains that

---

[5] If the grievance had been properly exhausted, it would not help Mr. Johnson. First, the grievance mentions the fight solely as a basis for a transfer request but fails to complain about the conduct that gives rise to Mr. Johnson's claims in this case, related to Defendants' alleged failure to prevent or to stop the fight. Second, the grievance fails to identify any Defendant, either by name or description. See Administrative Directive 19-34, *Doc. 53-2 at 5* (stating: "A grievance must specifically name each individual involved in order that a proper investigation and response may be completed.").

unidentified ADC officials knew that allowing him and inmate Goehler to be housed on the same hallway placed him a substantial risk of serious harm and that unidentified ADC officials failed to "respond reasonably" when he was attacked on April 2, 2024. *Id.*

On June 9, 2024, Mr. Johnson submitted the informal resolution for grievance VU-24-226. *Doc. 53-7 at 1.* In that grievance, Mr. Johnson complains that another inmate stabbed him five times with an "IcePick shank" and that "ADC has a failure to control tools and weapons." *Id.*

Mr. Johnson proceeded to Step Two of the grievance procedure for each of these four grievances. The Grievance Coordinators rejected each grievance as untimely.[6] *Doc. 53-4 at 4*; *Doc. 53-5 at 4; Doc. 53-6 at 4; Doc. 53-7 at 4.* Mr. Johnson appealed to the Chief Deputy/Deputy/Assistant Director. Chief Deputy Reed rejected each grievance appeal because Mr. Johnson failed to attach the Unit Level Grievance Form as required by the inmate grievance procedure. *Doc. 53-2 at 12*; *Doc. 53-4 at 3; Doc. 53-5 at 3; Doc. 53-6 at 3; Doc. 53-7 at 3.*

---

[6] As noted above, the ADC inmate grievance policy requires an inmate to submit a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident. *Doc. 53-2 at 6.*

As to grievance VU-24-204, Mr. Johnson argues it was not timely filed because he left the facility on a gate pass on May 31, 2024. *Doc. 62 at 5.* This argument makes no sense. He initiated this grievance on May 26, 2024, *before* leaving the facility on a gate pass, and one day after the fifteen-day limit for filing an informal resolution about the May 10 incident.

For valid procedural reasons, the ADC failed to provide Mr. Johnson with a final decision on the merits of grievances VU-24-204, VU-24-205, VU-24-225, and VU-24-226. As a result, the claims raised in these four grievances were not fully exhausted.

### 3.    Grievance VU-24-228

On June 11, 2024, Mr. Johnson submitted the informal resolution for grievance VU-24-228. *Doc. 53-8 at 1*. In that grievance, Mr. Johnson complained that, on that date, the dish room door in the chow hall was left open in violation of ADC policy. *Id*.

On June 21, 2024, Grievance Coordinator Thornton rejected this grievance, but did not explain why. *Id. at 4*. Mr. Johnson appealed that grievance decision to the Chief Deputy.

On July 1, 2024, Chief Deputy Director Reed rejected that grievance appeal because Mr. Johnson failed to include the Unit Level Grievance Form as required by the ADC grievance procedure. *Id. at 3*.

For valid procedural reasons, the ADC failed to provide Mr. Johnson with a final decision on the merits of grievance VU-24-228. As a result, the claims raised in this grievance were not fully exhausted.

### 4.    Grievance VU-24-309

On September 20, 2024, Mr. Johnson submitted the informal resolution for grievance VU-24-309. *Doc. 53-9 at 3*. In that grievance, Mr. Johnson complained that: (1) on May 10, 2024, two inmates stabbed him because Defendant Carrington and other unidentified ADC officials failed to ensure that inmates were in their assigned housing areas; and (2) all officers on duty on the morning of May 10, 2024, failed to protect him. *Id*.

On September 25, 2024, ADC Inmate Grievance Coordinator Danielle L. Knight rejected this grievance. Ms. Knight indicated on the form that the grievance procedurally flawed for one of three reasons (untimely, duplicative, or frivolous), but she failed to check the appropriate box. However, Mr. Johnson acknowledged in his appeal that "I was told this grievance was untimely." *Doc. 53-9 at 2*.

Mr. Johnson appealed the decision to the Chief Deputy Director. On October 3, 2024, Chief Deputy Director Reed rejected the appeal and for cause checked the box indicating that the time allowed for the appeal had expired. *Id. at 1*. Mr. Johnson's grievance papers suggest that he dated the appeal of Grievance Coordinator Knight's decision on September 26, 2024, the day after he received her decision. *Id. at 2*. Assuming that Mr. Johnson's appeal was timely and denied for the wrong reason, this does not mean that Mr. Johnson's failure to exhaust should be excused. As Mr. Johnson noted in his grievance appeal statement, he was told this

grievance was denied because it was untimely. Mr. Johnson waited one hundred eighteen days, almost three months, after the fifteen-day deadline (May 25, 2024) for grieving issues related to the May 10, 2024 incident.

As to this grievance, there is no dispute that Mr. Johnson failed to complete the administrative review process in accordance with applicable procedural rules, a precondition to bringing suit in federal court, or to get a decision on the merits. *Woodford*, 548 U.S. at 90 ("proper" exhaustion means "using all steps that the agency holds out, and doing so properly"); *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits").

For valid procedural reasons, ADC officials failed to provide Mr. Johnson with a final decision on the merits of grievance VU-24-309. As a result, the claims raised in this grievance were not fully exhausted.

### 5. Grievances VU-24-352, VU-24-353, VSM-24-1382

On June 8, 2024, Mr. Johnson submitted the informal resolution for grievance VU-24-352. *Doc. 53-10 at 5*. In that grievance, Mr. Johnson complained that: (1) as a result of Defendant Minor's and other unidentified ADC officials' "carelessness," on May 10, 2024, two inmates attacked him in the chow hall; and (2) once the attack began, unidentified ADC officials failed to intervene to stop the attack. *Id*.

On June 8, 2024, Mr. Johnson also submitted the informal resolution for grievance VU-24-353. *Doc. 53-11 at 5*. In that grievance, Mr. Johnson complains that, on May 10, 2024, unidentified shift officers allowed two inmates to attack him. *Id*.

On June 27, 2024, Mr. Johnson submitted the informal resolution for grievance VSM-24-1382. *Doc. 53-12*. In that grievance, he stated that he had spoken to "Creatinton" (presumably referring to Carrington) about why he did not stop the inmates from attacking him on May 10 and that he "failed to protect me when he could have." *Id*.

Inmate Grievance Coordinator Thrower rejected each of these grievances as untimely pursuant to the ADC grievance procedure. *Doc. 53-10 at 4; Doc. 53-11 at 4; 53-12 at 5*. Mr. Johnson appealed each of those grievance decisions to the Chief Deputy/Deputy/Assistant Director. Chief Deputy Director Reed rejected each of these appeals "due to an untimely matter."[7] *Doc. 53-10 at 2; Doc. 53-11 at 2; Doc. 53-12 at 2*.

For valid procedural reasons, the ADC failed to provide Mr. Johnson with a final decision on the merits of grievances VU-24-352, VU 24-353, and VSM-24-

---

[7] On the Chief Deputy Director's decision forms regarding these grievances, Chief Deputy Director Reed checked the pre-printed box indicating that the appeal was rejected because "[t]he time allowed for appeal had expired." *Doc. 53-10 at 3, Doc. 53-11 at 3; Doc. 53-12 at 3*. However, in the grievance summary submitted for these grievances, the comments section clarifies that Chief Deputy Director Reed rejected the appeal "due to an untimely matter." *Doc. 53-10 at 2; Doc. 53-11 at 2; Doc. 53-12 at 2*.

1382. As a result, the claims raised in these three grievances were not fully exhausted.

### 6.    Grievance VU-24-369

On November 17, 2024, Mr. Johnson submitted the informal resolution for grievance VU-24-369. *Doc. 53-15 at 3*. In that grievance, Mr. Johnson complains that he has a pending action before Arkansas Claims' Commission regarding Defendants Carrington and Minor's failure to protect him from the May 10, 2024 attack and requests that internal affairs investigate the May 10, 2024 incident. *Id.*

On November 21, 2024, that grievance was forwarded to the Grievance Officer. *Id.* The following day, Inmate Grievance Coordinator Thrower rejected that grievance as untimely. *Id. at 2*.

On December 6, 2024, Chief Deputy Director Reed returned this grievance because "Step Two was appropriately rejected." *Id. at 1*.

Mr. Johnson failed to fully exhaust the claims raised in grievance VU-24-369.

### 7.    Grievance VSM-24-1565

On November 29, 2024, Mr. Johnson submitted the informal resolution for grievance VSM-24-1565. *Doc. 53-16 at 5*. In that grievance, Mr. Johnson explained that he was filing a section 1983 lawsuit regarding the violation of his constitutional rights and requested that internal affairs conduct an investigation. *Id.* He specifically

listed the ADC officials involved, including Defendants Bell, Carrington, and Minor, but did not include any description of any particular incident. *Id.*

On January 16, 2025, the Warden found Mr. Johnson's grievance without merit because he only included vague allegations, rather than describing a specific incident. *Id. at 4.*

On January 19, 2025, Mr. Johnson appealed that decision to the Chief Deputy/Deputy/Assistant Director. *Id.* On February 11, 2025, the Director issued his decision specifically stating that he did not address the merits of Mr. Johnson's appeal because Mr. Johnson "failed to provide details of an incident for investigation." *Id. at 3.*

Based on a review of Mr. Johnson's grievance papers, it appears that he included the Incident Report Summary for the May 10 incident with grievance VSM-24-1565. *Id. at 6-8.* However, the ADC inmate grievance policy specifically provides that "[a]dditional sheets, including additional pages of the grievance written on Unit Level Grievance Forms (Attachment I) should not be attached and will be returned to the inmate upon submission or as soon as practical. ONLY THE STATEMENT IN THE SPACE PROVIDED ON THEATTACHMENT I FORM WILL BE MAINTAINED AND CONSIDERED THE GRIEVANCE SUBMISSION." *Doc. 53-2 at 6.* As a result, even if Mr. Johnson had included the

14

incident report with his grievance or any appeal, ADC officials would not have considered that information in addressing Mr. Johnson's complaint.

For valid procedural reasons, the ADC failed to provide Mr. Johnson with a final decision on the merits of grievance VSM-24-1565. As a result, the claims raised in this grievance were not fully exhausted.

### D.    Summary

Based on the current record before the Court, there is no genuine issue of material fact on the threshold question of whether, *before* bringing this lawsuit, Mr. Johnson exhausted his pending claims in accordance with applicable procedural rules such that ADC officials were obligated to investigate and address the merits of Mr. Johnson's claims rather than dismissing them for valid procedural reasons.

As a result, Mr. Johnson's claims against Defendants should be dismissed, without prejudice.

## IV.   **Conclusion:**

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' motion for summary judgment (*Doc. 53*) be GRANTED.

2.    Mr. Johnson remaining claims against Defendants Bell, Carrington, and Minor be DISMISSED, without prejudice, for failure to exhaust his administrative remedies.

3.    The Clerk be instructed to close this case.

DATED 22 January 2026.

_____
UNITED STATES MAGISTRATE JUDGE